We have the first case on calendar, Wright v. Green Tree Servicing. Good morning. May it please the court, counsel, I'm Daniel Edelman for the appellants. Household sold one of plaintiff's two loans to Green Tree. Can I interrupt for just one second? Am I correct that if there weren't two separate mortgages, I mean, behind your arguments are the fact that there are two separate mortgages? Had there only been one mortgage on the property, it would have been perfectly clear what this was all about. I think there still would be a violation. I've seen cases in which, for example, a notice is sent with respect to a loan which had previously been on the property because of a prior owner or had been paid off, and somebody thinks that it's an open loan. That you are talking about is one that arises out of the fact that there's a first loan and a second loan, and the question is what this all refers to. It shows how important the requirement is. I probably wouldn't bring a case if there was only one loan, no issue as to a prior loan still being on record. You say there might be a cause of action. Truth in lending still requires that the disclosure in all cases identify the new owner of which loan. In that case, it may be appropriate now rather than later to ask you what, inasmuch as there were two loans, or taking into account the fact that there were two loans, what was the injury to your client? The importance of the disclosure requirement is that the ownership of the loan governs rights as to modifications. Now, I think that under the Struble case and Spokio, informational injury is sufficient, and I think that where Struble says that disclosure of information that affects your rights or obligations in the particular transaction is sufficient, given the fact that this controls your right to modification, there have been problems with Green Tree not making proper accommodations with respect to modification or misrepresenting what your rights are. So, yes, it's important. Nothing material in this particular case? Well, actually, the plaintiffs were behind. They were in need of a modification, and this did impact them. The problem in that respect is that it's not in the second amended complaint, which was filed before Spokio, dismissed without the Spokio argument being raised right after the decision came out. Struble was decided on appeal. It was first raised in Rule 28 filings. So that if the court considers it important to set forth the fact that the plaintiffs were behind, needed a modification, this impacted the modification process, I would ask that the matter be remanded, which has been done in other cases with similar chronologies, so we can put all this in. How did it affect the modification process? Is that because your client didn't know which mortgage had been acquired by Green Tree? Correct. Ultimately, they find out, but it takes some time to do this. Wouldn't they have deduced it pretty easily because they got a notice saying that the new servicing company is Green Tree? No, Your Honor. Right after that, they get the notice saying that Green Tree has acquired the mortgage. I mean, how could they be all that bewildered? In fact, the two notices are confusing. On May 23, 2014, Household sends a letter using its loan number, which says that servicing is being transferred to Green Tree effective June 16th and stating that nothing else about your mortgage loan will change. On June 11th of 2014, Green Tree sends its notice out using only its loan number, which has not been previously disclosed or made known to the plaintiffs in any manner, and stating that the creditor that is the owner changed on May 16th. So in other words, before the date of the transfer of servicing notice, which says that nothing is being changed, they're notified that something else has changed. The two notices are inconsistent. There's a phone number. The, well, you call and The thing is, I mean, you have complicated notices. These are complicated transactions, which are very consequential. I certainly see that. On the other hand, your client claims to be bewildered, and there's a phone number to call if you have a question. Truth in lending requires a written disclosure and one that is in a form you can keep so you have a record. It is very, first, it's problematic to get through. Second, they can tell you whatever they would like. Again, Green Tree is subject to a consent order regulating misrepresentations connected with loan modifications. So it's important that this be done in writing in a form they can keep, that it identify the loan, so you have something that is in writing that is enforceable, and that was not done. Is your claim solely based on the interpretation as opposed to the language of the statute or the regulation? No, Your Honor. The regulation clearly states that the disclosures required by this section shall identify the loan that was sold, assigned, or otherwise transferred, and then it has a list of items of information to be provided. Nothing specific in the regulation was complied with, was it not? Well, the items of information, yes, but they have nothing to do with identification of the loan. It doesn't say that you identify the loan by providing the four items of information. It says identify the loan, then provide it. The district court interpreted it erroneously as saying that as long as you provide the four items, none of which actually have anything to do with identification of the loan, that's enough. Whether you're referring to the statute or you're referring to the regulation, it may not matter, but referring to the regulation. It doesn't matter because in Struble, the court- I accept for purposes of argument it doesn't matter, but what's the answer to the question? Is it the statute that has itself alone that has been violated, or is it the regulation? All three, the regulation and the interpretation. Well, you set forth two. Go ahead. I'm sorry. The regulation and the interpretation specifically require identification of the loan. The statute says that you shall give notice of such transfer, and at least implicit in that is a statement of what it is that is being transferred. I see my time is up, so then- You've reserved rebuttal. Yes, Your Honor. We'll hear you then. Thank you, Your Honors. Good morning, and may it please the Court, Marty Bryce for appellee defendant Greentree. The last time I had the honor to argue in this court, I actually argued the Struble v. Comenity Bank case on behalf of the bank, and I would submit that the decision of this court in Struble is controlling in two respects. First, Struble dealt with a different section of the official staff commentary, but that section, like this section, provided examples, and it used the word examples. It used the permissive word may, and it also indicated that the bank had an option. All the same language used in the section of the official staff commentary at issue here, plus the official staff commentary at issue here goes even further by using the word flexible. This court in Struble squarely held that given that language, the same language we've got at issue in this case in the official staff commentary, that, quote, because the model form language is explicitly optional, comenity cannot be found to have violated statutory, and it gives the statute at issue in that case. It was not any particular language that's required. It's flexible. How was this flexible standard met in this case? Well, it was met in several respects, Your Honor, and one to answer an earlier question. TILA itself does not require identification of the loan. That's in Reg Z, and then the official staff commentary is what has the language they contend was missing here, the old account number and or the balance. The loan at issue was identified here because it was sent to the borrowers, the notice, the rights. They knew they had a loan. It identified the property address. The question in this case, I think, is if there were one loan, that would be right. There were two loans. How did they know which loan it was referring to? That's the question. Well, they know which loan that was referred to, Your Honor, because they were previously provided with a notice of servicing transfer that specifically identified Green Tree as the new servicer. The June notice at issue in this case. Are you saying they necessarily, or whatever the word you would use, put those two things together and knew which loan they were talking about? Yes, Your Honor, and this Court's jurisprudence under TILA, I think, is very clear, that we're not to assume that the average consumer can't read, can't understand, and is non-intelligent. What's the basis for assuming that Green Tree knew that the initial notice from Household had gone out? In other words, if you're saying that the reasonableness of Green Tree's communication is framed by the prior communication from the predecessor servicer, what says that Green Tree knew that that communication, which did more specifically refer to the loan in question, was even being sent out? Well, because Green Tree was the new servicer, Your Honor, this didn't happen in isolation, and, in fact, the statute requires both the old servicer and the new servicer to provide notices. It's not uncommon, and it's expressly permitted under TILA, for there to be a single notice on behalf of both the new and the old servicer. And Green Tree would have previously purchased the servicing rights, so all this happens in lockstep as both the statute and the regulations require. So how on the pleadings can we find, in effect, that Green Tree knew that Household's initial notice had been sent out to the plaintiff? Well, I think you can look at the timeline here, Your Honor. You've got the May 23 notice from HFRC, the old servicer, that expressly identifies Green Tree, followed by Green Tree's change in ownership notice that expressly also notes it's the new servicer, followed by, and this isn't in the appendix, but it's in the district court docket at docket number 6-2, and that is Green Tree's third notice, the rights would have received, the second from Green Tree, again indicating that Green Tree is now your new servicer. So between all of those things happening in lockstep in compliance with the statute, because, again, the way this case started, this is their third complaint, and the first complaint they said no servicing transfer notices were provided, and that turned out to be wrong, and then they completely switched their theory. But the fact that these notices were all provided, there's no question about that, the fact that they were all timely provided under the statute and the regulations shows this happened precisely the way it was supposed to. It seems to me to be easily asked, at least, and that is, did they know that it referred to the first, what is it called, closed-end mortgage and not the second? That's, I mean, isn't that the question? Well, I agree with you, Your Honor, and as a matter of common sense, I can't understand how they wouldn't. They had two loans, not 100. The first loan, something either happened to it or not. The first loan either stayed with HFRC so they received no notice of anything, of a servicing transfer or an ownership transfer, or the first loan was transferred to a different new servicer or its ownership was transferred to a different new purchaser and they would have received notices from those new servicers, those new purchasers. And there's no allegation of that in the complaint either way. But if any of those things happened, that's all that could have happened. I mean, the loan didn't, the first loan didn't go away. It either stayed with HFRC or it was transferred to someone else. They would have received notices of that and there's no reason to believe that they wouldn't have and there's certainly no allegation in the complaint that they didn't. The lack of notice with respect to the second mortgage made it clear that it was the first mortgage that was involved. I'm sorry, Your Honor. It's me. I'm sitting too far away. I say the absence of any notice, any activity with respect to the second mortgage is what made it clear that this was all about the first mortgage. The reverse, Your Honor. This is the second mortgage. I'm referring to the first mortgage, but yes. But again, the first could have been transferred hypothetically. We don't know. But if it either stayed with HFRC or it was transferred and if it was transferred, there's no reason to believe that HFRC didn't provide the requisite notice or the new service or new purchase there, consistent with Tyler, didn't provide the requisite notice. You would agree that if both mortgages were in flux within a month or two and nobody gave the single number that links together one of the old transactions with the new transaction, it would be pretty confusing. Frankly, Your Honor, I wouldn't. In May, they receive a notice saying your servicing is being transferred to Greentree. It identifies Greentree. In June, they receive a notice saying Greentree is now your new owner and we're your servicer, consistent with the May notice. I just don't understand what's so difficult about that. And if they had any question, there's a phone number they could have called. Why not just use the old account number instead of making the customer pick up the phone? Well, Your Honor, I guess we wouldn't be here if the old account number was what was issued. But that was the plaintiffs I presume wouldn't have brought the case. But that could still be confusing as well because the old account number is meaningless to Greentree. If you called us up and you gave the old account number, we wouldn't be able to do anything with that. The loan now operates off the new. And if you erroneously put the old account number on a check, your payment, for instance, it would come in to us and it would be Greek to us. Going forward, it's actually the simpler, safer thing just to provide all the new contact information, the new name, the new address, the new account number. Of course, one might imagine a world in which both the old and the new information were given. I mean, is that possible, Your Honor? Yes. I mean, I won't argue with that. That's possible, but clearly not required because if the CFPB wanted to require it, it wouldn't have used the flexibility May, for example, language it used in the staff commentary. Can I ask you this? You're saying that this is all about the second open-end mortgage, not the first. Correct, Your Honor. I got confused between the two of them. Does that make me unreasonable? I would never assume that you were or contend you were unreasonable. Because that's exactly the kind of mistake that we're talking about. Well, it's not your loan, Your Honor. You haven't been living with it for years, receiving notices for years. In conclusion, I do want to mention the other point Struble controls on, and that's standing. There were four disclosures at issue in Struble. Two of the disclosures dealt with the obligations of the borrower, what the borrower had to do to ensure that they had their rights under TILA. Two of the obligations were the banks. What this Court concluded is there was standing where the obligations were the consumers, no standing where there were the banks. And that's the same here. There's nothing here, unlike in Struble, no rights that these consumers were going to lose, even assuming that this disclosure was improper in any way. Now, there's a last-minute attempt to say, well, they were considering a modification, which isn't in the complaint. But they had notice from the district court, because after they filed the first amended complaint and we moved to dismiss, they brought up we were confused and we were misled. And the district court said that's not in the complaint. Yes. Aren't they seeking statutory damages? And for that, they don't really have to go into a particular injury or damage. Well, actually, Your Honor, in Struble at page 190, this Court said the exact opposite, said, quote, where violation of the procedure at issue presents no material risk of harm to that underlying interest, close quote, there's no standing, even though the plaintiffs in Struble were seeking statutory damages and didn't get the disclosure required by the statute. And I would submit this case is on all fours with the two disclosures at issue in Struble where this Court held there was no standing because they were not at risk. Thank you. Thank you very much. Briefly, Your Honors, the official interpretation states that the new creditor may use any information that would reasonably inform a consumer which loan was acquired or transferred and then gives several examples. Use your time any way you want, but I suggest that the question of standing might be helpful for you. Very well, Your Honor. The Struble case says that if the disclosure pertains to your rights or obligations in the particular transaction you have standing, you do not have to show monetary loss. Spokio itself says that deprivation of material information is a sufficient injury. In Struble, for example, the Court held that there is no standing to challenge a disclosure requirement which would have been appropriately provided with the comment not applicable because there was no automated transfer provision that the bank had in that case. In this case, information about the ownership of the loan is material. It governs your rights as to loan modifications. It prevents misrepresentations by green trees such as those complained of in the consent order proceedings. So it clearly is material. Struble says you do have standing. It would not be necessary for us to allege what particular impact it had in the particular case because there is a material risk of harm when information as to ownership is not provided. That's why the statute that added the requirement is called the Helping Families Save Their Homes Act. That's what's important about it. The interpretation was not complied with. Can I just come back to the interpretation not being complied with? The language of the interpretation uses the word of flexibility. Suppose you had given the old account number, the old number for the loan, presumably the rights would not have automatically known by account number what a loaner is being referred to. They still would have had to do some work. They would have had to dig through a file cabinet to sync up the number with the loan. What's different between that and picking up the phone? I mean, why is one more inflexible than the other? One gives reference to a statement which has been recently furnished and which leaves a written record of what loan is being transferred. Picking up the phone does not do that, and it's particularly inappropriate for Green Tree to suggest that picking up the phone is sufficient when they have just consented to an order finding that people picked up the phone and got misinformation relative to their loan modifications. I mean, in the record of this case, can we assume that a phone call would have been ineffectual? We do have the consent order proceedings, so there's certainly no suggestion that it would have been efficacious. Is there any pleading that you have done that suggested that the phone call didn't succeed in identifying the loaner, that your client even tried? It's not. There's nothing in the record that so suggests. Thank you. Thank you, Your Honors. We'll reserve decision.